UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:23-CR-51-PPS-JEM |
| ) | |
| EDWON DE'SHAUN BUSH, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant, Edwon De'Shaun Bush, was a passenger in a car with a busted windshield that was pulled over by a Gary Police Officer. Right after the car came to a halt, Mr. Bush decided to get out of the vehicle and flee on foot, despite an officer's warning to stop. Mr. Bush was apprehended quickly, not too far away from the initial stop. A K-9 then followed Bush's scent and footprint trail in the snow and discovered a handgun buried in the snow next to an apartment building along the route traveled by Bush. The government alleges that Bush deposited the gun there.

Bush now seeks suppression of all evidence acquired as a result of the traffic stop, including the gun and any statements he made to law enforcement during a custodial interview. [DE 27 at 5.] The motion fails for a number of reasons. First, it is untimely. Second, it fails on the merits too – the officer had reasonable suspicion to pull over the car because the windshield was so heavily damaged that it appeared unsafe to drive. After the reasonable traffic stop, Bush then fled the scene, abandoned the gun, and it was later retrieved by an officer. Nothing about this violates the Constitution.

And even if it wasn't reasonable for the officer to initiate the stop, there was no "seizure" of Bush that violated his Fourth Amendment rights. He ran away from the scene and abandoned the gun at a time he was not in custody or seized by the police. For all of these reasons, the motion is denied.

## Background

Bush is currently charged with one count of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). [DE 1.] This case was previously charged on January 18, 2022, by the State of Indiana, for unlawful possession of a firearm by a serious violent felon and resisting law enforcement. [DE 27 at 1.] On March 15, 2022, Bush filed a motion to suppress in state court arguing, *inter alia*, that the warrantless seizure of Bush was unlawful and violated the Indiana Constitution. [*Id.* at 1-2.] He also filed a motion to dismiss alleging as a passenger in the vehicle, he was not required to remain at the vehicle pursuant to Indiana state law. [*Id.* at 2.] On June 2, 2022, a hearing was held on both the motion to suppress and motion to dismiss. The trial court denied both motions. *Id.* Bush filed a motion to certify the order for interlocutory appeal, the trial court granted the certification, and on September 8, 2022, the court of appeals denied the request for interlocutory appeal. [*Id.* at 3.] Despite the considerable expenditure of resources in state court litigating the Fourth Amendment issues there, the U.S. Attorney decided to intervene and file charges federally. Thereafter, the State of Indiana dismissed the state case against Bush.

I held an evidentiary hearing on this matter on June 28, 2024, and these are the

2

facts that came out. The incident at issue happened around 8:00 a.m. on January 7, 2022. Corporal Briggs was on duty with the Gary Police Department and he was traveling northbound on Madison Street when he saw a gray Pontiac Grand Prix traveling southbound that had a badly damaged windshield. As the car passed him, Briggs noticed the driver's side window was down and he recognized the driver as a person who had previously had encounters with the law. After the car passed him, Officer Briggs immediately did a u-turn, and then activated his emergency lights. The car quickly pulled into a parking lot of an apartment complex and came to a stop.

Officer Briggs testified credibly that he pulled the car over because he thought it was unsafe to drive. He described significant damage to the windshield on the right and middle part of the glass; it looked like something had struck the windshield and shattered it. Officer Briggs said he was worried the driver might not be able to properly see out of the windshield, especially in his periphery, and that it was unsafe for the passengers and potential pedestrians or other drivers alike. He did not witness any impaired or erratic driving; but nevertheless, Officer Briggs was concerned about the driver's ability to safely maneuver the car.

After the car pulled into a parking spot at the apartment complex, Officer Briggs saw the front passenger immediately open his door and exit the vehicle. Officer Briggs instructed him to stay inside the vehicle, but he ignored the command. Then the person (who was later apprehended and identified as Bush) started to run. Officer Briggs could see his hands by his waist and he could see what he thought was an extended

3

magazine sticking out of his waist. Briggs ordered him to stop, but Bush kept on running – he ran around an apartment complex and out of Briggs' sight, and then reappeared a few seconds later as he was seen running towards a strip mall. Briggs had called in for backup, and another officer quickly arrived on the scene and apprehended Bush.

Briggs learned that after Bush was caught, the officers found no weapon on him. So he initiated a search with his K-9 named Roki. Roki followed fresh footprints in the snow and the scent of Bush, and alerted to a small pile of snow where Officer Briggs could see a gun magazine just barely protruding. The gun was a Glock 27 .40 caliber semi-automatic pistol. CSI took over from there - they sent the weapon to be tested and the DNA results showed very strong support for the inclusion of Bush's DNA on the gun.

Just a few hours after his apprehension, ATF Task Force Officer Cannon interviewed Bush. After he waived his Miranda rights, Bush answered questions. When asked about the windshield of the car he was riding in, Bush answered that it was "busted." Bush denied possessing or knowing anything about the firearm located by the police, but admitted to being a convicted felon.

## Discussion

I.  **Timeliness**

The government rightly questions the timeliness of this motion, and this is the place for me to start my analysis. The arraignment order in this case directed all Rule

12(b) pretrial motions, including motions to suppress evidence, must be filed within 28 days of the August 16, 2023 arraignment – in other words, by September 13, 2023. [DE 12 at 2.] No motion was filed by that deadline, nor was there a request for additional time. Three weeks later, Bush's first attorney moved to withdraw. [DE 20.] Bush's present counsel was appointed a short time later (on October 12, 2023). [DE 23.] New counsel never made a motion for an extension of time to file a motion to suppress, which would have been the appropriate move. *See, e.g., United States v. Suggs*, 703 F. App'x 425, 427-28 (7th Cir. 2017); *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008) (concluding good cause lacking to file belated pretrial motion where newly appointed counsel never requested an extension and filed motion four months after appointment). Instead, she waited until April 15, 2024 to file the motion – just 11 days before the final pretrial conference was set in this matter, and 7 months after the deadline to file a motion to suppress. While Bush argues in his Motion for Leave to File Belated Motion to Suppress, which he filed *after* his motion to suppress, that he was waiting to obtain discovery from the government [DE 29 at 3], his counsel conceded during the hearing that she had the discovery she needed by January 2024. As such, the motion to suppress is plainly untimely. But even if I consider it on the merits, it fails as well.

## II.     Reasonableness of the Traffic Stop

The Fourth Amendment grants protection to individuals from unreasonable searches and seizures, and all automobile stops are subject to "the constitutional imperative that [they] not be 'unreasonable' under the circumstances." *Whren v. United*

5

*States*, 517 U.S. 806, 810 (1996).  Because traffic stops are deemed analogous to Terry stops, "they require only reasonable suspicion of a traffic violation – not probable cause."  *United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021).  The standard is objective, and is "based upon the facts available to the officers at the moment of the seizure."  *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (internal quotation marks omitted).  "When officers reasonably believe they have witnessed a traffic violation, that provides reasonable suspicion justifying a traffic stop, even if the violation is quite minor."  *United States v. Smith*, 32 F.4th 641, 641 (7th Cir. 2022).  It is the government's burden to prove by a preponderance of the evidence that reasonable suspicion supported a traffic stop.  *Jackson*, 962 F.3d at 357.

Driving with a defective windshield is generally not permitted.  *See* 49 C.F.R. § 393.60(c) (providing, inter alia, the windshield condition must be unobstructed and free of significant damage).  The evidence supports a finding that Officer Briggs did in fact observe a damaged windshield.  He testified very credibly about the significant damage to the windshield.  *See, e.g., T.D. v. State of Indiana*, 873 N.E.2d 184, 186 (Ind. Ct. App. 2007) (where the officer testified the windshield was cracked sufficiently to obstruct the driver's view, "[t]his evidence was sufficient to support his reasonable belief that a traffic stop was required to determine whether the obstruction made the vehicle sufficiently unsafe [to] warrant a traffic citation."); *State of Indiana v. Pease*, 531 N.E.2d 1207, 1210 (Ind. Ct. App. 1988) ("[E]ven though the [Indiana] legislature did not expressly prohibit the operation of a motor vehicle with a broken or cracked windshield

6

. . . if a vehicle is operated in such an unsafe condition, by virtue of the condition of its windshield, as to endanger the driver or any other person, a violation has occurred.").

I have no reason to doubt that Officer Briggs stopped the car because he believed it to be a danger to the motoring public. Driving a car with a shattered windshield is plainly dangerous. Bush insinuates that Briggs had other, more nefarious reasons for stopping the car. But even if Officer Briggs had ulterior motives—and again, I don't believe he did—it is neither here nor there. This is because "(u)lterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996).

Bush points to the fact that Officer Briggs issued a citation for a "windshield violation" and erroneously cited to Indiana Code § 9-19-19-2 (which provides that a vehicle "required to be registered with the bureau must be equipped with a front windshield"), but this has no real significance. *See United States v. Jackson*, 962 F.3d 353, 358 (7th Cir. 2020) (finding it didn't matter what the officer's subjective belief was about the language of the municipal code violation at the time of the stop). Briggs might have accidentally cited to the wrong windshield violation (in reality, there seems to be no exact Indiana Code violation to cite to for a damaged windshield), but he was believable when he testified about the condition of the windshield in question and that he thought it was in such a damaged condition that it was unsafe to drive. This constitutes sufficient probable cause to stop the vehicle. *See, e.g., United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000) (officer had probable cause to stop vehicle

with cracked windshield, regardless of whether the actual length or position of the crack constituted an actual commission of a traffic offense by driving a vehicle with an excessively cracked windshield).

In this case, I am certain that Officer Briggs had reasonable suspicion to conduct the traffic stop at issue. He personally viewed a car driving with a heavily damaged windshield to the extent he was concerned it would impair the driver's ability to safely maneuver the vehicle. This is a totally sufficient reason to initiate the stop.

### III. Whether Bush Was in Custody or Had Been Seized By the Police

Even if he did not have reasonable suspicion, the gun still should not be suppressed because Bush threw it in the snow after fleeing the scene, when he was not in custody or seized by the police. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, Bush clearly thought he didn't need to stick around – indeed, he ran from the scene without any consequences - neither Officer Briggs nor the K-9 unit pursued him.

In addition, the Seventh Circuit has clearly stated that "it does not matter that [the defendant] was seized previously during the brief traffic stop, a seizure is a single act, and not a continuous fact and the minute [the defendant] fled from the scene of the traffic stop that brief period of custody ended." *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) (citations and quotation marks omitted). Moreover, in *United States v.*

8

*Griffin*, 652 F.3d 793 (7th Cir. 2011), the defendant led the authorities on a low-speed car chase, and before he eventually pulled over, the defendant tossed a plastic bag containing crack into newly fallen snow in a parking lot.  The Seventh Circuit denied suppression of the crack, finding the defendant discarded the drugs prior to being seized, which only occurs when, "by means of physical force or a show of authority, his freedom of movement is restrained."  *Id.* at 798 (citation omitted).  The defendant in *Griffin* argued since he eventually yielded to a show of authority by the police, the "seizure" began for constitutional purposes upon the initial show of authority and continued until he submitted.  *Id.* at 799.  The Court found, contrary to the defendant's argument, "a seizure by show of authority does not occur *unless* and *until* the suspect submits."  *Id.* at 800-01 (emphasis in original); *see also Brendlin v. California*, 551 U.S. 249, 262 (2007) ("a fleeing man is not seized until he is physically overpowered").

Bush never submitted to Officer Briggs' initial show of authority (when he pulled over the car and then ordered Bush not to leave the vehicle); instead, he ran from the scene and was only apprehended later, by different law enforcement authorities.  Here, because Bush discarded his gun when he was fleeing, before he was "seized" for Fourth Amendment purposes, and before he submitted to the officers' show of authority, the gun cannot be considered the fruit of an unconstitutional seizure.

## Conclusion

For all of the above-mentioned reasons, the motion to suppress [DE 27] is **DENIED.**  Additionally, the motion to file a belated motion to suppress [DE 29] is

**DENIED AS MOOT** because, although the motion to suppress is untimely, the claim was addressed and rejected on the merits as well.

SO ORDERED.

ENTERED: July 18, 2024.

                                       /s/   Philip P. Simon
                                       PHILIP P. SIMON, JUDGE
                                       UNITED STATES DISTRICT COURT